We have four arguments this morning, beginning with case number 241027, EcoFactor v. Google. May it please the Court. The appeal this morning challenges the Patent Trial and Appeal Board's determinations of invalidity in three IPRs concerning EcoFactor's patents. Across each of the final written decisions, the Board relies entirely on the conclusory opinions from the petitioner's expert, and those conclusory opinions fall short of the substantial evidence needed to sustain the Board's decision. Now the first issue, and this is in our blue brief at 30, goes across all three of the IPRs. And the final written decisions in the 473, 475, and 538 IPRs should each be reversed because the Board's determination that the Ehlers reference, that's at Appendix 5078, teaches the predicted rates of change in temperature, limitations, and all of three of EcoFactor's patents, is not supported by substantial evidence. Now to orient the Court, I will note that this issue, this first issue, is virtually identical to the first issue in the next appeal, which you'll hear this morning. In both this and the 1367 appeal, the issue boils down to whether substantial evidence supports the Board's determination that the Ehlers reference teaches predicted rates of change. And I'm going to emphasize a lot predicted in predictions. And is this the one that very much focuses on one particular figure in Ehlers? It does, Your Honor, figure 3D in Ehlers. And I expect we'll talk a fair amount about figure 3D. Now the Board starts off in its final written decision in the 473 IPR as an example, saying that, quote, Ehlers teaches a system that tracks and learns about thermal gain characteristics of the home. Now tracking and learning is different than predicting. Tracking and learning, I would submit, is a correlation. You're determining a correlation between some data. Predicting is trying to predict the causation of how that data may change a future result. Could predicting be like tracking, learning, and then later using that information to predict? In other words, I think there's something like, you know, if it's 99 degrees, this is how the temperature will increase inside the home, the rate at which will increase inside the home if a set point is set at 72. Why wouldn't, you know, later after that information is stored in a database, why wouldn't using that information in some way be predicting? Because, you know, you look at the temperature outside, you look at what the set point is, and you use that information. Why isn't that predicting? It certainly could. You could use that data to then later predict if the exact same conditions arose, the exact same outside temperature, exact same inside temperature. You could use that data to predict, but we submit that is not what the Ehlers reference discloses and not what the board relied on in finding that Ehlers teaches the prediction limitation. Can you remind me, is there a claim construction of the word predicted here? There was not. Neither party asked for a claim construction here. Okay. In describing figure 3D at Ehlers, Ehlers at paragraph 253, another paragraph that you'll probably hear a lot about today, and that's at appendix 5114, Ehlers describes figure 3D as data, quote, that the thermostat has recorded. So again, figure 3D, we submit, is a graph of recorded temperature, not predicted temperatures. And in fact, the board acknowledges elsewhere in its opinion by saying, quote, figure 3D shows a graph showing the indoor set point, parentheses, temperature versus time, and that's at appendix 15. This is, I guess, a variant of the question maybe Judge Stoll was asking. Once you have the figure 3D chart based on past history, then why isn't it evident that, for example, at 16 minutes past the set point, you look at the chart and it tells you what's going to happen at 32, 48, et cetera, that that's a prediction. As long as you're not at the right-hand edge of the figure, anything, you're predicting what is going to happen from a point to the left of the right-hand edge. I think that could be considered a prediction, but I think what the graph in Ehlers shows is recorded temperatures, which again, to my point earlier, is a correlation between time and the indoor set point. And then to later predicting, you need to understand the causation between the indoor set point, the temperature, the outside temperature, characteristics of the home, whether or not the HVAC is off. You need more data than just the two data points that are graphed on a two-axis chart, as shown in figure 3D. And to kind of reiterate that point is that Ecofactor, of course, agrees that Ehlers teaches tracking and learning about the thermal gain characteristics of a home, but does not discuss predicting the rate of change of temperature in that home or location at a later date. Now, it's important to note, Ehlers does, in fact, four other times in the Ehlers reference, which is quite long, use the word predict, but none of them have anything to do with rates of change of temperatures. Ehlers talks about predicting fuel refills or maintenance of the HVAC system. Ehlers does not discuss predicting rates of change of temperatures. Nonetheless, the board made the leap that because Ehlers records temperatures, that recorded temperature, quote, represents a predicted rate of change of the temperature inside the structure at a first location. That's the board's opinion at Appendix 31. What do you think Ehlers does with this information that it collects as discussed in paragraph 253 and shown in the figure? Do you think it just collects it and never uses it? What is your view? It's a little tough to know what the Ehlers application does with it because it also, Ehlers discusses figure 3D as a table rather than a graph, and of course, it is a graph as we can see. It's not a table, but it says it uses to calculate a future offset for a thermostat that it could set if those exact parameters that were at issue in the... Does it say exact parameters? I do not know if it says exact parameters. I don't think it does, but yeah. I think you directed us to 31 for the board's analysis of prediction, but don't they say some about it on 29 as well? There seems to be a whole paragraph on why they don't agree with your arguments, and they explain how, in their view, Ehlers calculates the thermal gain rate so that it can make predictions. They do. It's that it's the last part of your honors where you said so that it can make predictions that we submit is not what Ehlers shows. We believe that petitioner's expert fairly reads Ehlers, and then he says, I think this quote is so that it can make predictions, and that we submit is not shown by substantial evidence in Ehlers, and the board's recitation of the petitioner's experts so that it can make predictions is likewise not supported by Ehlers itself or by Figure 3D. I'm going to have another chance to address this issue in the later appeal this morning, so I'm going to address to the second issue in our brief, which is a blue brief 50. And here, the final written decision in the 473 IPR, this is about just the 186 patent. There, the board's determination that Ehlers, again, teaches calculated a predicted rate of change of temperature in a first location conditioned by at least one HVAC system is not supported by substantial evidence. Now, that's because all of the thermal gain rates of Ehlers is that the thermal gain rates of Ehlers, in the board's own opinion, are only relevant when the HVAC system is turned off. That's at Appendix 16, Appendix 17, and Appendix 33, where the board states, quote, the thermal gain rate in Ehlers applies when the HVAC is off. But again, the claim language of Claim 1, the 186 patent, requires that the rate of change in temperature in a first location, that first location must be, quote, conditioned by at least one HVAC system. And Ecovac just admits that if the HVAC system is turned off, as the board admits at least three times in its opinion, that location is not, quote, conditioned by at least one HVAC system at that time. Do I remember correctly that one of the parties has a view that it's just off, and the other party has the view that it's cycling off and on, right? That, some of the different figures, different figures 3E and F will show a sign pattern of when it comes on and off to maintain a solid temperature. But the board's opinion on 3D and petitioners on 3D, their argument that the board adopted, is that it's off the entire time in 3D. The other graphs show different circumstances, but it is true that the... Can I ask you where, because I didn't think that was clear, that the board viewed it as being off the entire time, or the petitioners viewed it as being off the entire time. Where do you see that it says that it's off the entire time? I believe that's at appendix 16, where the, in discussing figure 3D, the board says, quote, the slope of the line, which represents the thermal gain rate, is the rate of change of the internal temperature over time during periods in which the HVAC is turned off. But what about that during periods in which it's turned off? That might be consistent with the idea of cycling on and off. I think if you look at, on the next page, appendix 17, also discussing figure 3D, the board says, because it, meaning 3D, is discussing an increase in the internal temperature, that means that the HVAC is cycled off at that time. It shows the rate of temperature change over time while the HVAC system is off. Yeah, but again, that's cycled off, right? So suggesting that at some point it's cycled on. Well, I don't think petitioner or board ever argued, or there is evidence that figure 3D shows cycling. Some of the other figures in the patents show cycling. But figure 3D, which is the entire basis for the argument that thermal gain rates are a predicted rate of change, I think the board, and I think my colleague will argue that they agree that the HVAC is turned off that entire time. Thank you. You are into your rebuttal time now, so you can decide how to use your time. I'll keep going, Your Honor. I'm going to jump to the fourth issue in our brief. This is the blue brief at 62. There, the final written decision in the 538 IPR relied upon Ehlers and Ruck. It's a reference we haven't discussed yet. It's at appendix 25134. The board determined that those two references teach a second automated set point at a second time as required by independent claim 9. Now, the issue here is, I think, kind of short. The reason that the board's entire opinion spans one paragraph, and that paragraph starts out with the board stating, quote, claims 1 and 9 are very similar. Now, I agree that claims 1 and 9 are very but the petitioner and the board did not map the differences from claim 1 and 9 to the prior art. They said that claim 1 and 9 are very similar, so we don't need to go through what we just went through with claim 1. Where did you preserve your argument on this point at the board? I believe we did that at, I don't have the citation here, Your Honor, but I can get that for you. But the argument was that claim 9 does not, I mean, claim 9 differs from 1 precisely because, of course, there are different elements at issue. Neither the board nor the petitioner mapped any of the references to those additional set points to the second automated set point at a second time. And I'll close with on this point that we're not aware of any precedent that allows the petitioner or the board to ignore additional claim limitations from a later claim simply because it is, as the board called, very similar to another claim already briefed. And unless the court has any additional questions, I'll yield the remainder of my time. Okay, thank you. Thank you, Your Honor. Ms. Lawton. Good morning, Your Honors. May it please the court. My name is Elizabeth Lawton from the law firm of Smith Baluch, and I represent the Appellee Google LLC today. Unless the court has any specific questions, I'll just go ahead and address the issues that counsel raised starting with the issue of the thermal gain. So I was pleased to hear counsel concede that Figure 3D is directed to tracking historical data and that the temperature is changing in Figure 3D because there was a brand new argument that was presented in counsel's opening brief that stated that the temperature was not changing in Figure 3D, and they seemed to back away from that in reply. And so I just wanted to note that it seems now that there is an agreement that in Figure 3D, the system is tracking historical data. And I believe, as Judge Stoll pointed out, it's learning about the system. It's learning about how the structure behaves. And this is the structure without the system on? Right. Without the HVAC system. Exactly. And so it's absolutely right that under normal HVAC operation, the system is going to cycle on and it's going to cycle off. And it does that in order to maintain a set point. That's kind of the essence of thermostatic control. So it will, for example, have a set point that's at 72, and if it goes a little bit above that, maybe when it hits 73, maybe when it hits 74, the system will kick back on and cool it back down to 72. And that's a cycling process. And so as Ehlers describes this process as a whole, these are all consecutive paragraphs. It's describing what it's doing here in order to do its thermal modeling. And it begins with Figure 3D, and it says, you know, the first step here in the analysis is to model the structure, right? Because structures behave differently. Maybe an older house isn't insulated very well, and it might warm up very, very quickly. And maybe something that is a newer house has great insulation, or maybe something's in the basement or something like that underground, and it's not going to warm up as quickly. It wants to understand how the structure behaves when the system is off. And then, as Ehlers specifically says, the second step, the next step then, is to use that learned information. Where is that? Let me find that for you. I believe that is specifically a paragraph 0254 of Ehlers, but let me find that in the appendix. Right, so this is at appendix page 5114. I'll give you a minute to get there. I think we're all there. Okay, great. So you see beginning at paragraph 0254. So the paragraph before that, that's where we're talking about learning the characteristics. And then at 0254, the second step is now that we have this information, and we've gained this information about the system, is then to learn the operational run characteristics of the HVAC system as a function of the thermal gain. So now we're going to figure out when the system is cycling on and it's cycling off, and then we're going to correlate that with this behavior of the system. And so here, Google's position, as it's stated below, is that we believe that Ehlers does track thermal gain rates both when it's on and off, but certainly that just tracking it when it's off is sufficient to meet the claims here, and that's absolutely what it's doing here. Right, so there was a lot of emphasis on the word predicted in, I guess, the first, the 186 patent. Where does Ehlers say something about predicting rates of change in temperature as opposed to learning what they were during the tests? Sure, and so I would just note, I would direct the court specifically to Mr. Shah's, I'll discuss Ehlers certainly in response to your question, Your Honor, but I would just direct the court to Mr. Shah's reply declaration that was submitted actually in all three proceedings. And I just want to note that he was never cross-examined on that declaration. Ecofactor had the opportunity to do so and to ask him all these questions about prediction, and just never did so. So that declaration stands unrebutted in this proceeding and provides substantial evidence. He goes through and he explains in quite some detail how it's using these thermal gain rates to do predictions, but in response to your question specifically, Your Honor, I think that the board focused on, and I can certainly focus on here the example in 0256 of Ehlers, which is just on the next page there, appendix page 5.1.1.5, where it is then using, so it says here, another aspect of the present invention, the system uses the learned thermal gain characteristics of the site, right, so it's taking what it learned, all of that information it collected, along again with this other information, and it's then using that information to compute a set point, an offset to a set point, which then becomes a new set point, as the evidence shows, which will not increase HVAC run time in the future. So it's modeling, for example, what's going to happen for the rest of the day, and it's saying, okay, well, if we assume that these rates are going to increase like this, we know that if we pick a set point, for example, a set point of 74 degrees, the system will not have to cycle on more than, for example, 33 percent of the time. And so the whole reason it's collecting all this information is to be able to control the system in the future, to have this, so it does this in the past, and then on any particular day, when it wants to use this information, it's then using that to make a prediction regarding how the structure will behave, how the system will behave, in order to control the system. What is there a particular portion of paragraph 256 that you would rely on for the idea that it's, you know, that it's using the thermal gain, you know, predictions of what the thermal gain will be, or the thermal gain in order to predict what the set point should be, or something like that? Well, so I would note here that it says it uses the learned thermal gain characteristics of the site, and it says the system uses the thermal gain rate of the home to produce a baseline, so then it then manages it going forward. So it specifically talks about how it's using it. Do you think the baseline is the predicted thermal gain? I think that the predicted thermal gain is that in order to know, and again, Mr. Shah explains this in detail in his declaration, and so I would certainly direct the court to this, for more specifics, but I think that the prediction is that, so you have a whole day here, right? For example, in figure 3E and in figure 3G, you have a day, and you want to figure out how you can make sure that you're not running your HVAC system too much for that whole day, right? And so the purpose of what it's trying to do is that it will know how the house will warm up when the system is off throughout that day. It models that out, it predicts that out, and then it says, okay, based off of all that information, we now know that if we set our set point, for example, at 74, the system is not going to have to run any more than 33% to maintain that set point. And so essentially, it's using those thermal gain characteristics to say, because for example, say we knew that it was going to be an incredibly hot day, and we looked at all of that, and we said, okay, well, today we know it's going to be 100 degrees out. There's no way that we can just maintain this at 33% using these set points. The system's going to be running all day long to try to cool it down. I'm sure we've all had that experience on a hot day where the HVAC system is just running constantly. It's going to say that, you know, we can't do this, and so for example, that talks about the instance in which the learned thermal gain of the site exhausts the lag temperature variant. It just can't be done. So it's using this information to say on a particular day, what can we set the set points to? So the prediction is using past data to say what's going to happen today, and so how should we set the system? And the way it's predicting how the temperature in the structure is changing for that day, and it needs that information in order to, for example, do these computations, because otherwise it wouldn't know. It wouldn't know, for example, you know, whether this could even be possible to set a set point there. That's something that it would not be able to do, that kind of computation and that kind of language of the claim when it talks about calculating one or more predicted rates of change in temperature at the location based on status of the HVAC system. Is that meant to be prediction of the rate of change dependent on the amount of on off of the HVAC system? Um, so I'll just note at the outset that this issue only relates to the 186 patent, so that claim language is only there. That doesn't, that isn't in the other patents. And so there was no construction regarding that. There was actually not a lot of discussion in the briefing about it. Google's argument was that it takes into account, the rates here take into account the status of the HVAC system, so they apply based off of whether it's on or it's off, and that's sufficient to meet the claims. It was also argued that they take into account whether it's in heating or cooling mode, and that also meets the claims. And so what the board said here is that both on and off are statuses of the HVAC system, and if they are based on when it's off, that meets the claim language. And I would just note that Ecofactor's argument here on appeal, where now it's really focused on this claim language, is it's something that actually is forfeited. And in fact, the precise argument they're making here that somehow you have to have predicted rates of change both when it's on and when it's off, and then the exact nature of the argument is unclear, but that seems to be what they're suggesting. They actually explicitly disclaimed that argument before the board. Just focusing for a minute on the premise that the language permits a reading of status of the HVAC system to be when it's off, that would be included, then was there argument before the board about the word predicted and whether the fact that the figure 3D is a recording of conditions and then preparing a figure summarizing the figures that have been recorded is not prediction? I mean, that was not how I recall the argument being presented, particularly in connection with this particular language relating to the status of the HVAC system. That was not something that, based on the status of the HVAC system, that was not something that was really raised, I think, by the other side. They did certainly challenge that these are not predictions. They did say that below, but not in the context of that not working as a prediction. But I would just note that it does. Why would you say that those are predictions? Because all it needs to do, all the claim language requires is that the system calculate, it predicts the rate of change of the inside temperature in the structure. And so it is predicting how the temperature in the structure will change. And it does it based on the status of the HVAC system here, according to the board's findings, because the system is off. And that is a status of the HVAC system that's not disputed. Our position is that it does it when it's on, too, but the board relied on off, and that's certainly sufficient. And I would note that in the briefing... So does this amount to saying, so yesterday I did all these tests, and in the evening prepared this graph. So I predict that tomorrow, under these conditions, this is what will happen? Precisely. Okay. And so, yeah, these apply for certain conditions. And of course, the rate of change of inside temperature would be different if there's cooling. That's the whole purpose of cooling, right? Things apply under particular conditions. So here, these rates apply under particular conditions. For example, the outside temperature certainly affects it. And obviously, whether there's cooling or there's no cooling, that certainly affects how the temperature changes in the structure. One of the arguments Echofactor makes, started with today, is that your expert is merely conclusory. What's your response to that? I would just say that our expert submitted very detailed declarations here. For example, a very long reply declaration that really goes into this in quite a lot of detail. He prepares a bunch of figures. He goes through exactly how the system works and how all this is being used. And so I would say that that's really the opposite of conclusory. Is the length of what the expert has said, is that sufficient for us to conclude that it's not conclusory? It's certainly not the length that's the substance, Your Honor. I just note that he spent quite some time on this, and it really does go into detail. And for example, he actually prepares graphs and gives examples and goes through the standard functioning of an HVAC system and why these particular examples that we're talking about, why this is something that someone would understand Ehlers to be teaching here, that this is the type of model. So how a person of ordinary skill in the art would understand what Ehlers to be teaching. Precisely. And to be clear, again, the standard here is substantial evidence, of course. And their expert, we actually have a credibility finding against their expert here. Their expert's opinion, in fact, was conclusory, and the board found so. And the board also found that his opinion, I see I'm over my time. May I continue? Just a little bit. Okay, just a little bit. We actually have a credibility finding and found that his opinion was inconsistent with Ehlers' teachings, with all of Ehlers' teachings, was not credible and provided absolutely no support for it. And so I think the idea that our expert's testimony was conclusory, I think, is the exact opposite of what happened here below. Okay. Thank you, Your Honor. Thank you. A very brief rebuttal, Your Honors, and this is mostly for Judge Stark's question about the preservation of the Claim 9 argument. That was that in Ecofactor's patent in response to the at Appendix 20171-173, Ecofactor alleged that the petition had failed to allege for all the challenge claims that the automated set points, meaning both the first and the second automated set points of Claims 1 and Claim 9, were not compared or used to detect changes as required by the subsequent claim elements. And that, Your Honor, is the support for why that was not abandoned. Okay. Can I just ask, I don't remember being clear about your position on whether we have any live, i.e. non-moot issue before us on Claim 9 of the 597. I thought Claim 9 was in the group, namely 9 to 16, that were held indefinite in district court in a, I guess, a agreed upon judgment with prejudice that's not appealed. So those claims are invalid. Why should we be talking about Claim 9? I think, Your Honor, that you don't have a response to that question here today. But if that is true, I think I would agree with you, but I would have to look that up, Your Honor. Okay. Thank you. That's it for this case. The case is submitted, thanks to counsel, and we will hear the next case.